Frances A. Smith
Texas State Bar No. 24033084
Nicole T. LeBoeuf
Texas State Bar No. 00791091
SHACKELFORD MELTON & MCKINLEY, LLP
3333 Lee Parkway, Tenth Floor
Dallas, Texas 75219
Telephone: 214.780.1400
Facsimile: 214.780.1401
**COUNSEL FOR CHRISTOPHER A. PAYNE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ONDOVA LIMITED COMPANY, | § | Case No. 09-34784-SGJ-11 |
| | § | Chapter 11 |
| DEBTOR | § | |

**CHRISTOPHER A. PAYNE'S RESPONSE TO ORDER TO SHOW CAUSE WHY HE SHOULD NOT BE HELD IN CONTEMPT, AND BRIEF IN SUPPORT THEREOF**

COMES NOW Christopher A. Payne ("Payne" herein) and would show this Court that he should not be held in contempt. In support thereof, Payne would show the following.

**I.
INTRODUCTION**

Payne would show this Court that the threatened sanctions are not reasonably tailored to the ends to be attained through the civil contempt powers of the court, are not supported by the facts, and are inappropriately punitive in nature. Payne would further show this Court that the exercise of the contempt powers of this Court are not necessary.

**II.
BACKGROUND**

On the 22nd day of July 2011, Christopher A. Payne ("Payne"), a 32-year attorney in good standing with the State Bar of Texas, filed together with attorney Dennis Olson, an Objection to Trustee's Motion for Authority to Sell Property of the Estate (the "Objection"), which objection

was made on behalf of Novo Point, LLC [Dkt. No. 597].[1]  In doing so, Payne stepped into the waning moments of a case that has been proceeding since July 2009, has occupied much of the time of two federal courts, and has engendered a good deal of judicial frustration over the years. The first of the federal cases is styled *Netsphere, Inc., et al. v. Jeffrey Baron and Ondova Limited Company*, cause no. 3:09-CV-0988-F, filed in the United States District Court for the Northern District of Texas, Dallas Division, and is pending before Judge Royal Furgeson (the "District Court Case").  The second federal case is the above-referenced and styled bankruptcy case, filed on July 27, 2009 (the "Bankruptcy Case").[2]

Prior to Payne's involvement, on November 24, 2010, Judge Furgeson entered an order appointing a receiver over the individual, Jeffrey Baron ("Baron" herein), and "any entity under the direct or indirect control of Jeffrey Baron, whether by virtue of ownership, beneficial interest, a position as officer, director, power of attorney or any other authority or right to act" (the "Receivership Order") [Dist. Ct. No. 124].[3]  Twelve entities were expressly identified in the original Receivership Order as being "Receivership Parties" subject to the control of the court appointed Receiver.  *Id.*  Neither Novo Point, LLC ("Novo Point" herein) nor Quantec, LLC ("Quantec") were among the twelve entities identified as Receivership Parties.  *Id.* On December 17, 2010, Judge Furgeson entered an order specifying that Novo Point and Quantec were intended to be subject to the receivership established by the Receivership Order (the "Clarification Order") [Dist. Ct. No. 176].  The Clarification Order was appealed by Novo Point and Quantec, by a notice filed by attorney Gary Schepps ("Schepps") on January 18, 2011, and

---

[1] The docket numbers of documents filed in this Court are referenced as "Dkt. No. __."
[2] Payne notes that litigation involving Debtor Ondova Limited Company and Netsphere has spanned an even longer period, including at least one other federal case filed in January of 2007, styled *Ondova Limited Company v. Netsphere, Inc.*, cause no. 3:07-CV-00001-D, filed in the United States District Court for the Northern District of Texas, Dallas Division and assigned to the Hon. Sidney A. Fitzwater.

[3] Docket numbers of documents filed in the District Court Case are referenced as "Dist. Ct. No. __."

that appeal is awaiting resolution by the Fifth Circuit Court of Appeals [Dist. Ct. No. 227].

Notably, on January 20, 2011, some time after the entry of both the Receivership Order and the Clarification Order, the Receiver filed in the District Court Case an Emergency Motion to Strike Novo Point's Notice of Appeal of the Clarification Order, and further requested the district court to compel Schepps to show on what authority he was retained as counsel for Novo Point and Quantec. See Exhibit 1. On January 24, 2011, Judge Furgeson refused to strike the appeal or to require Schepps to show authority, stating he is of the opinion that he does not have the authority to do so and deferring to the jurisdiction of the Fifth Circuit. See Exhibit 2.

As he will testify at the hearing on this matter,[4] at the time Payne was approached about representation, he understood that Novo Point, LLC is a Cook Islands entity which does not recognize the authority of the Receiver and has selected its own manager. Payne conducted his own research regarding entities formed in the Cook Islands, and found that there is no treaty with the Cook Islands that authorizes the courts of the United States to impose any authority over such entities. Nor could he find any other basis for the recognition of a United States Court's authority over a Cook Islands entity. On information and belief, Novo Point, LLC is composed of a single member, The Village Trust, which is a Cook Islands trust, and the trustee of The Village Trust is Southpac Trust International, Inc. ("Southpac"), a Cook Islands corporation. On It was Payne's understanding that neither The Village Trust nor Southpac had made an appearance in the Bankruptcy Case or in the District Court Case.

Prior to his engagement, Payne reviewed the documents establishing the retention of a manager by Novo Point and Quantec. He also reviewed a May 23, 2011 Management Agreement wherein Lisa Katz was retained as Operations Manager over Novo Point's affairs in Texas, and reviewed the powers afforded her by that agreement, satisfying himself that Katz had

---

[4] Rather than file a Declaration, Payne will appear and give testimony at the hearing on this matter.

authority to sign an engagement letter on June 23, 2011, retaining Payne as counsel for Novo Point and Quantec.

Payne also understood, from reviewing pleadings filed in the District Court Case, that the Clarification Order and the underlying Receivership Order could be, and are being, challenged on the basis that no evidence was presented in the District Court Case of any of the three grounds on which a receivership may be ordered. In addition, Novo Point and Quantec argue that there was no showing of good cause, imminent danger of loss to property, or clear necessity supporting the allegedly *ex parte* request that these two entities be included in the Receivership Order. See Exhibit 3, p. 3. They also argue that there is no evidence that Baron has direct or indirect control or any ownership interest, beneficial interest, or other relationship to Novo Point and Quantec which would make them subject to the Receivership Order. *Id.*, pp. 3-4.

In other words, it appeared likely to Payne that: (1) Novo Point was not properly subject to the jurisdiction of the U.S. Courts, or at least its member and managers were not;[5] (2) there was a likelihood that Novo Point would prevail on appeal and be removed from the burden of receivership; and (3) whether or not the receivership was in place, Novo Point was entitled to control its own internal governance.[6] Thus, when Payne made his first appearance on behalf of Novo Point on July 22, 2011, by signing on to the Objection, Payne had a good faith basis to believe he was properly representing Novo Point.

Moreover Payne understood, at the time he filed the Objection, that at least one other

---

[5] *See, e.g.,* the Clarification Order, p. 6: "Nothing in this Order shall be construed either as evidencing or not evidencing that Jeff Harbin, Novo Point, LLC and/or Quantec, LLC are or are not in control of any of the trusts (i.e., the Court is not issuing a ruling at this time as to whether Jeff Harbin, Novo Point, LLC, or Quantec LLC control any of the trusts)." See Exhibit 4.

[6] *See, e.g.,* that portion of the transcript of the December 17, 2010 hearing in the District Court Case, in which Judge Furgeson states, "I have no objection to Quantec, LLC and Novo Point, LLC continuing to operate. I am concerned – as talented as Mr. Vogel is, I'm concerned that it may be a bridge too far for him to operate Quantec, LLC and Novo Point, LLC." [Dist. Ct. No. 260, p. 17]. *See* Exhibit 5.

party was potentially claiming an interest in one or more of the domain names which were the subject of the Trustee's Motion for Authority to Sell Property of the Estate (the "Motion to Sell"), and the Receiver was not actively investigating the claim or intending to file an objection to the Trustee's Motion to Sell. See Response and Reservation of Rights Related to Trustee's Motion for Authority to Employ Broker and Trustee's Motion for Authority to Sell Property of the Estate [Dkt. No. 596]. Representation before the Bankruptcy Court of Novo Point's interest in the domain names, by a party other than the Receiver, thus appeared to be critical if the objection was to be heard at all. In fact it was Payne's understanding that a similar motion to sell domain names, granted in the District Court Case, was stayed pending appeal to the Fifth Circuit. Even if the domain names made the subject of the Motion to Sell belonged to a valid receivership party, such sales had been stayed by the Fifth Circuit. It did not appear that this fact was being relayed to this Court.

From Novo Point's standpoint, the appeal of the Receivership Order may result in an order that removes Novo Point from the receivership entirely. In that event, and if Novo Point is correct that it is the proper owner of the one remaining domain name made the subject of the Motion to Sell, Novo Point would be severely disadvantaged by the sale of the name as authorized by this Court. The domain names are unique. To the extent, if any, that they can be adequately monetized, it would appear from the history of expenses in these matters that the funds generated from their sale will likely be depleted by the expenses and demands of the receivership and bankruptcy estates. The distribution of funds to pay the expenses of Ondovo or of Baron or any other entity would prejudice Novo Point in a manner that could not likely be remediable. For these reasons, Payne believed in good faith that Novo Point needed representation in the bankruptcy court, to preserve its objection to the Motion to Sell.

A hearing on the Trustee's Motion for Authority to Sell Property of the Estate was had on July 26, 2011. On the day prior to the hearing, the Receiver appointed by Judge Ferguson filed The Receivers' Response to Novo Point, LLC's Objection and The Receiver's Motion for Show of Authority [Dkt. No. 602]. On the same date, the Trustee filed its Motion to Strike Novo Point LLC's Objection to Trustee's Motion for Authority to Sell Property of the Estate [Dkt. No. 598]. On July 26, 2011, this Court did not hear Payne's and Olson's arguments on the Objection, instead issuing an order both denying the Objection and striking the Objection from the record. At the same hearing, the Court entered its Order Granting the Receiver's Motion for Show of Authority and Findings of Fact (the "Order to Show Authority") [Dkt. No. 605], which included the following order:

> Further, it is ORDERED, ADJUDGED, and DECREED that Christopher Payne, the Law Offices of Christopher Payne, Dennis Olson, and Olson Nicoud & Gueck, LLP may not again appear before this Court in the above-entitled matter on behalf of Novo Point, LLC or Quantec, LLC without the Court first granting a Motion requesting the authority to do so, and the Court will only entertain such a motion if it is supported by compelling evidence in the form of, among other things, live testimony of a representative of Southpac Trust Limited.

Similar language is found in the Order Granting Trustee's Motion to Strike Novo Point, LLC's Objection to Trustee's Motion for Authority to Sell Property of the Estate [Dkt. No. 609]. Other than filing a notice of appeal of the Order to Show Authority, Payne has not intentionally or willfully taken any other action in this Court, except to provide the information required under § 2019 as ordered by this Court, and to later amend that notice.

Fourteen days following entry of the Order to Show Authority, Payne filed his Notice of Appeal of Order Granting the Receiver's Motion for Show of Authority and Findings of Fact [Dkt. No. 610]. Immediately thereafter, Payne was contacted by Schepps and told that Schepps would be taking over representation of Novo Point and Quantec with respect to the appeal of the orders entered by the Court following the July 26, 2011 hearing. Payne sent to Schepps all of

Payne's work product generated in connection with the appeal of these orders, so that Schepps could use the work that had been done by Payne and the entities would not be billed twice for the same work.  It was Payne's understanding that Schepps would be undertaking any and all further representation in connection with the appeal of the Bankruptcy Court orders and any corresponding motion to stay the effect of those orders, as well as in the District Court on appeal of the Bankruptcy Court's orders.

Nonetheless, without his express authorization, and certainly without his knowledge until after the fact, notices of appeal which Payne had drafted prior to the assumption of the representation of Novo Point and Quantec by Schepps, were filed "as is" by Schepps, and included only Payne's signature block and electronic signature.  Payne had no notice that this would be done, and so had no opportunity to file a motion to show authority or set it for hearing. Both Schepps and Payne agree that the filing of documents bearing Payne's signature block and signature, after the single notice of appeal filed on August 16, 2011, was done in error.

The Court thereafter, on September 1, 2011, held a hearing on the Trustee's Motion to: (I) Show Cause Why Christopher Payne and Gary Schepps Should not be Held in Contempt and Sanctioned; and (II) Strike Notices of Appeal and Motion to Stay Sale Order, and Brief in Support Thereof.   At the hearing, the Court issued a show cause order on her own motion, as to why she "should not hold [Payne and Schepps] in contempt of court and should not sanction you both for violating this Court's prior order and for purporting to represent a party without any legal authority that I can discern here" [Dkt. No. 637, p. 70].  The Court further stated that it does not believe "anything short of 50,000 is going to get people's attention here" [Dkt No. 637, p. 72].

## III.
## ARGUMENT AND AUTHORITIES

The contempt and sanctions powers of the bankruptcy court are clearly defined by statute and case law. Sanctions that impose a significant monetary penalty, are utilized to punish the contemnor and vindicate the authority of the court, or are punitive in nature are considered to arise out of criminal contempt. *Ingalls v. Thompson (In re Bradley)*, 588 F.3d 254, 263 (5th Cir. 2009); *In re Cranford*, 75 Fed. Appx. 964 (5th Cir. 2003) (unpublished). The bankruptcy courts in this district do not have criminal contempt powers. *Placid Refining Co. v. Terrebonne Fuel and Lube, Inc. (In re: Terrebonne)*, 108 F.3d 609, 613 fn. 3 (5th Cir. 1997).

With regard to civil contempt, such power "must be exercised with restraint and discretion," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991), and the court should employ "the least possible power to the end proposed," with least restrictive measures tried first. *In re: Network Cancer Care, LP*, Bankruptcy No.02-39409-BJH-11, 2004 Bankr. LEXIS 2559, at *28, citing *Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996) (quoting *Spallone v. United States*, 493 U.S. 265, 110 S. Ct. 625, 107 L.Ed. 2d 644 (1990)).

Respectfully, this Court's suggestion that a sanction of $50,000.00 is an appropriate response to Payne's actions is not in accordance with the contempt jurisprudence of this district or this Court. Payne is a newcomer to this litigation, and has already refrained from engaging in the activity this Court sought to restrain by its Order to Show Cause.

### A. The threatened sanctions are inapplicable and exceed the scope of the contempt powers of this Court.

### 1. This court does not have authority to exercise powers of criminal contempt.

A contempt order is characterized as either civil or criminal depending on its primary purpose. *FDIC v. LeGrand*, 43 F.3d 163 (5th Cir. 1995). If the order's primary purpose is to

punish the contemnor and vindicate the authority of the court, the order is one for criminal contempt. If the primary purpose is to coerce a party for a violation, such that the "penalty" is automatically lifted on compliance, the order is one for civil contempt. *Id.* at 168. Civil contempts may also be remedial, addressing the consequences of defiant conduct on an opposing party. *In re Bradley*, 588 F.3d at 263; *Lyn-Lea Travel Corp. v. American Airlines, Inc.*, 283 F.3d 282 (5th Cir. 2002); *Thyssen, Inc. v. S/S Chuen On*, 693 F.2d 1171, 1173 (5th Cir. 1982).

An extremely large fine indicates that the order is punitive in nature, and thus constitutes criminal contempt. *In re Cranford*, 75 Fed. Appx. 964 (5th Cir. 2003) ($10,000 fine found to constitute criminal contempt due to its punitive nature). Likewise, "where there is no apparent relationship between the amount of the sanctions and the injured party's loss, that evinces an intent to punish rather than a remedial intent." *In re: Network Cancer Care,* 2004 Bankr. LEXIS 2559 at *27, citing *Yaquinto v. Greer*, 81 B.R. 870 (N. D. Tex. 1988).

The distinction between civil and criminal contempt is a significant one, and "far transcends mere formal identification." *Cliett v. Hammonds*, 305 F.2d 565, 569-70 (5th Cir. 1962). For instance, in the case of criminal contempt, the accused is presumed to be innocent until found guilty, and the evidence must show guilt beyond a reasonable doubt. *Id.* at 570. Criminal contempt also requires the establishment of the element of *mens rea*. *In re Bradley*, 588 F.3d at 264, citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193, 69 S. Ct. 497, 93 L. Ed. 599 (1949).

Criminal contempt is also governed by Federal Rule of Criminal Procedure 42, which requires that advance notice be give to the respondent that the charged contempt is criminal in nature, and further requires that "the contempt be prosecuted by an attorney for the government, unless the interest of justice requires the appointment of another attorney." The bankruptcy court

possesses no broader power than other federal courts to punish for contempt.  *Isaacs v. Hobbs Tie & Timber Co.*, 76 F.2d 209, 212 (5th Cir. 1935).

The Fifth Circuit has repeatedly held that the bankruptcy courts do not have the power or the authority to impose criminal contempt.  See, e.g., *Placid Refining Co. v. Terrebonne Fuel and Lube, Inc. (In re: Terrebonne)*, 108 F.3d 609, 613 fn. 3 (5th Cir. 1997); but see *In re Hipp, Inc.*, 895 F.2d 1503 (5th Cir. 1990) (holding that bankruptcy courts do not have criminal contempt authority, at least as to contempt not committed in or near its presence).  The United States Bankruptcy Court for the Northern District of Texas, Dallas Division has agreed that bankruptcy courts do not have criminal contempt authority.  See, e.g., *In re: Network Cancer Care,* 2004 Bankr. LEXIS 2559 at *25, citing *In re Terrebonne*, 108 F.3d 609 (5th Cir. 1997).

With these parameters in mind, the imposition of a significant sanction against Payne, or a sanction which punishes for prior conduct, rather than seeking to deter future conduct, would go beyond the powers of this Court, as it would shift the actions of the Court into the realm of criminal contempt.

### 2.     This Court's contempt authority under 11 U.S.C. § 105 is limited, and requires a showing of bad faith which does not exist here.

Bankruptcy courts have the power to issue sanctions that are "necessary or appropriate to carry out the provisions of [the Bankruptcy Code]," pursuant to the civil contempt power accorded them by 11 U.S.C. § 105.  "Section 105(a) permits courts to enforce the rules in order to prevent an abuse of process."  *Coie v. Sadkin (In re Sadkin),* 36 F.3d 473, 478-479 (5th Cir. Tex. 1994).  In addition, Section 105(a) authorizes a bankruptcy court "to fashion such orders as are necessary to further the substantive provisions of the Bankruptcy Code."  *Coie v. Sadkin (In re Sadkin),* 36 F.3d 473, 478-479 (5th Cir. Tex. 1994) (citing *Chiasson v. Bingler (In re Oxford Management Inc.)*, 4 F.3d 1329, 1333 (5th Cir.1993)).  Nevertheless, "the powers granted by that

statute must be exercised in a manner that is consistent with the Bankruptcy Code." *Id.* The statute "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *Id.* (quoting *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir.1986)). Section 105(a) "does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code." *Id.* (quoting 2 Collier on Bankruptcy P 105.01[3] (Lawrence P. King et al. eds., 15th ed. 1994)).

This Court has recently found that a bankruptcy court which chooses to impose sanctions, under the authority of 11 U.S.C. § 105 or pursuant to its inherent authority to sanction, must make a "specific finding of bad faith." *In re Pastran*, 2011 Bankr. LEXIS 3598, *20, citing *In re Parsley*, 384 B.R. 138, 179 (Bankr. S.D. Tex. 2008) and *In re Gorshtein*, 285 B.R. 118, 124 (Bankr. S.D.N.Y. 2002). Bad faith is "something more egregious than mere negligence or recklessness." *Price v. Lehtinen (In re Lehtinen)*, 564 F.3d 1052, 1058 (9th Cir. 2009), quoting *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1192-93, 1197. The Fifth Circuit has found that "the 'bad faith' actions must occur in the course of litigation" and a court may not use its inherent power to sanction to address conduct underlying the substance of the case, but rather only to address conduct during the course of litigation. *In re Pastran*, at *18, citing *Rogers v. Air Line Pilots Assoc., Int'l*, 988 F.2d 607, 615-16 (5th Cir. 1993) and *Flanagan v. Havertys Furniture Cos., Inc.*, 484 F.Supp. 2d 580, 582 (W.D. Tex. 2006). Such conduct must be "callous and recalcitrant, arbitrary, and capricious, or willful, callous, and persistent." *In re Pastran*, *18-19, quoting *Galveston County Navigation Dist. No. 1 v. Hopson Towing Co., Inc.*, 92 F.3d 353, 358 (5th Cir. 1996).

Payne's appearance in this Court, and the acts he has taken in the course of this litigation have been very limited. Moreover, they were made in good faith. Because Payne believed in good faith that Novo Point had the authority to retain him and, further, that he had the right to

appeal the Order to Show Authority without seeking the leave which the appealed order required, the Court should not exercise the powers afforded it by § 105 and should not sanction Payne.

Payne believed that the filing of the appeal of the Order to Show Authority, without first showing authority, was appropriate because of the longstanding deference to appeals in the jurisprudence of this country. The courts have a policy of not discouraging meritorious appeals. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384 405, 408 (1990) (superseded in part on other grounds). In the course of a lawsuit, proceedings often take place in both the trial and appellate courts, and some motions or other actions, such as the motion to stay the pay orders pending appeal, may have impacts at both levels. *Webster v. Sowders,* 846 F.2d 1032, 1035 (6th Cir. 1988). "Nevertheless, the sanction statutes, the rules, and the case law provide for fairly clear separation between conduct on appeal sanctionable by the appellate court and conduct in the trial court sanctionable by the trial court." *Id.* A trial judge cannot sanction a party or a lawyer for taking an appeal. *Id.* The appellate court is to make the determination as to whether and appeal is frivolous. *Id.* "Just as it appears clear that a trial judge cannot sanction a party or lawyer for taking an appeal, we do not believe that it is proper here for the District Judge to threaten to sanction the defendants or their attorney for filing a motion to stay his order pending appeal on the grounds that the underlying appeal is frivolous. The only purpose of such threat is to prevent an appeal." *Id.* Appeals of district court orders should not be deterred by threats from district judges. *Id.* Appeals from bankruptcy courts to district courts should be treated no differently, and Payne acted in good faith in assuming that such an appeal would not constitute an act of contempt.

To the extent that the sanctions threatened against Payne are an attempt to deter future retention of counsel and/or future filings of pleadings by Baron or any entity believed to be associated with him, Payne submits that the proposed sanction is both overly large and directed

at the wrong party. A review of transcripts of prior hearings in both this case and the District Court Case reveals that the judges of both courts perceive an unsatisfactory pattern of hiring and firing attorneys on the part of Baron, and both have expressed frustration and dismay over the number of attorneys retained and the many filings engendered by each. This Court has suggested that Baron may be engaging in "theft of services," while the District Court has suggested that it is its intent to ensure that all of Baron's counsel are paid.

But Payne was not retained by Baron, and has never been so retained. Payne has had no more than one conversation with Baron, ever, lasting approximately fifteen minutes, regarding matters having nothing to do with the representation of Novo Point and Quantec. Even if Payne had been among the crowd of lawyers retained by Baron, the appropriate object of the Court's attention would not be Payne, who has only briefly made an appearance in this Court and has intentionally filed just two documents: the Objection and the appeal of the Order to Show Authority. The appropriate party to be restrained in such a way would be Baron, with a possible vehicle for the same being an injunction against future filings, under the allegation that he is a vexatious litigant.

11 U.S.C. § 105 authorizes only the imposition of such remedies as are "necessary or appropriate to carry out the provisions of this title [Title 11 of the Bankruptcy Code]." 11 U.S.C. § 105 (a); see also *In re Dyer*, 322 F.3d at 1186, citing *Walls v. Wells Fargo Bank*, 276 F.3d 502, 507 (9th Cir. 2002). It is inappropriate for a bankruptcy court to impose punitive sanctions under 11 U.S.C. § 105 (a). *In re Dyer*, 322 F.3d at 1193; citing *Sosne v. Reinert Duree (in re Just Brakes Corp. Sys.)*, 108 F.3d 881, 885 (8th Cir. 1997) (holding that "the power to punish" through punitive sanctions extends beyond the remedial goals of § 105 (a)).

3. **The inherent contempt power of the Court is inapplicable in this matter and should be limited to cases in which a fraud has been practiced upon the Court.**

A bankruptcy court has inherent powers to sanction attorneys, beyond the civil contempt authority afforded them by 11 U.S.C. § 105. *Lehtinen*, 564 F.3d 1052, citing *Dyer*, 322 F.3d at 1192-93, 1196. The inherent sanctioning power is "based on the need to control court proceeding[s] and [the] necessity of protecting the exercise of judicial authority in those proceedings." *In re Case*, 937 F.2d at 1023 (citation omitted). The court's inherent power "is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function." *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 702 (5th Cir. 1990), *aff'd sub nom Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). Such power "must be exercised with restraint and discretion," *Chambers*, 501 U.S. at 44, and "may be exercised only if essential to preserve the authority of the court." *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996).

As this Court has recently held, "[a] court should only invoke its inherent power if it finds that 'a fraud has been practiced upon it or that the very temple of justice has been defiled.'" *In re Pastran*, 2011 Bankr. LEXIS 3598, *17-18, quoting *Boland Marie & Mfg. Co. v. Rihner*, 41 F.3d 997, 1005 (5th Cir. 1995) (citing *Chambers*, 501 U.S. at 46)). Again, such conduct must be "callous and recalcitrant, arbitrary, and capricious, or wilfull, callous, and persistent. *In re Pastran*, 2011 Bankr. LEXIS 3598, *18-19, quoting *Galveston County Navigation Dist. No. 1 v. Hopson Towing Co., Inc.*, 92 F.3d 353, 358 (5th Cir. 1996).

Again, as this Court has recently noted, "regardless of whether a bankruptcy court chooses to impose sanctions under its inherent authority or under Section 105(a) of the Bankruptcy Code, it still must make a 'specific finding of bad faith.'" *In re Pastran*, 2011

Bankr. LEXIS 3598, *20 [citations omitted]. Such a finding cannot be made with regard to Payne.

### 4. The imposition of sanctions under 11 U.S.C. § 9011 would not be appropriate.

Rule 9011 requires that pleadings filed with the court not be filed for improper purposes. Fed. R. Bankr. P. 9011. By presenting a pleading to the court, a person is "certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:"

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

FED. R. BANKR. P. 9011(b).

Subsection (c) of Rule 9011 provides that, after notice and a reasonable opportunity to respond, a court may impose an appropriate sanction for violations of subsection (b) initiated either by motion of another party under Rule 9011(c)(1)(A) or on the court's own initiative under Rule 9011(c)(1)(B). Fed. R. Bankr. P. 9011(c)(1)(A)-(B).

#### (a) Rule 9011 limits the sanctions the Court may impose.

Even if the Court were to find a violation of Rule 9011, the rule itself limits the sanctions the Court may impose. For example, the Court may only order payment of a sum of money to the Trustee if a motion is made by the Trustee, the sanction is warranted for effective deterrence,

and the fees sought are reasonable and a direct result of the violation. FED. R. BANKR. P. 9011(c)(2). In addition, the movant must have complied with certain procedural safeguards, including the filing of a separate motion for sanctions, and the utilization of the 21-day "safe harbor" period. *Id.*[7] The safe harbor provision would apply had the Trustee brought a motion for sanctions. Because the show cause order was brought on the Court's initiative, subsection 9011(c) applies.

Since Rule 11 and Rule 9011 are substantially similar, cases interpreting Rule 11 guide the court in its application of Rule 9011. *See e.g., In re Case*, 937 F.2d 1014 (5th Cir. 1991).[8] "Under Rule 11, the district court has broad discretion to impose sanctions that are reasonably tailored to further the objectives of Rule 11. Proper objectives of Rule 11 sanctions are to deter, to punish and to compensate opposing parties for abuses in the signing of pleadings, with a focus on the attorney's conduct at the time of the signing. The court should use the least severe sanction that is adequate to fulfill this purpose." *American Airlines, Inc. v. Allied Pilots Ass'n*, 968 F.2d 523, 533 (5th Cir. 1992). *See also, Myers v. Akard (In re Dragoo)*, 186 F.3d 614, 616

---

[7] Rule 9011 provides a "safe harbor" for litigants and provides that the "motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion" on the offending party, the challenged document is not withdrawn. Fed. R. Bankr. P. 9011 (c)(1)(A). Rule 9011 requires service of a copy of the motion itself, not simply a warning letter, to be served on the allegedly offending party. *Cadle Co. v. Pratt (In re Pratt)*, 524 F.3d 580, 586-587 (5th Cir. Tex. 2008). The safe harbor provisions were intended to protect litigants from sanctions whenever possible in order to mitigate Rule 11's chilling effects, formalize procedural due process considerations such as notice for the protection of the party accused of sanctionable behavior, and encourage the withdrawal of papers that violate the rule without involving the district court. *Id.* Thus, "a failure to comply with them should result in the rejection of the motion for sanctions." *Id.*

[8] The Fifth Circuit Court of Appeals has held "that a construction of Rule 11 which evaluates an attorney's conduct at the time a pleading, motion or other paper is signed is consistent with the intent of the rulemakers and the plain meaning of the language contained in the rule . . . . Rule 11 was promulgated for a particular purpose -- to check abuses in the signing of pleadings." *Thomas v. Capital Sec. Servs.*, 836 F.2d 866, 874 (5th Cir. 1988) (superceded by statute in part as stated in *Highmark, Inc. v. Allcare Health Management Sys., Inc.*, 732 F.Supp. 2d 653, 666 (N.D. Tex. 2010)). This "snapshot rule remains the law of this circuit at least as to sanctions imposed based on the filing or signing of a document." *See Highmark, Inc. v. Allcare Health Management Sys., Inc.*, 732 F.Supp. 2d 653, 666 (N.D. Tex. 2010) (citing *Marlin v. Moody Nat'l Bank N A*, 533 F.3d 374, 380 (5th Cir. 2008)). Since *Thomas* Rule 11 has been amended to provide that "later advocating" a baseless position is a ground for sanction. *Id.* Payne has not asserted a baseless position for his authority either at the time of signing the objection and notice of appeal, nor later advocated a baseless position.

(5th Cir. Tex. 1999).

Sanctions must be chosen to employ "the least possible power to the end proposed." *Spallone v. United States,* 493 U.S. 265, 280, 107 L. Ed. 2d 644, 110 S. Ct. 625 (1990) (quoting *Anderson v. Dunn,* 19 U.S. 204, 6 Wheat. 204, 231, 5 L. Ed. 242 (1821)). A sanction imposed for violation of Rule 9011 "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." FED. R. BANKR P. 9011(c)(2). For sanctions imposed on its own initiative, the court may order directives of a nonmonetary nature or an order to pay a penalty into the court. *Id.*

In accordance with the Supreme Court mandate, the Fifth Circuit has continuously stated that "the basic principle governing the choice of sanction is that the least severe sanction adequate to serve the purpose should be imposed." *In re Midwest Props. No. Two v. Big Hill Investment Co., Inc.*, 93 B.R., 357, 361 (N.D. Tex. 1988). The range of "appropriate" sanctions is far-reaching and may include "a warm friendly discussion on the record, a hard-nosed reprimand in open court, compulsory legal education, monetary sanctions, or other measures appropriate to the circumstances." *Id.*

The sanctions awarded must be tempered with the Circuit Court's mandate that the *primary* objective of sanctions is to deter, not to compensate. *In re Midwest Props.*, 93 B.R. at 361. In other words, the sanctioning court must use the least restrictive sanction necessary to deter the inappropriate behavior. *In re First City Bancorporation*, 282 F.3d 864, 867 (5th Cir. Tex. 2002). Therefore, "the relevant considerations become the conduct and resources of the party to be sanctioned." *In re Midwest Props.,* 93 B.R. at 361. A court's power to impose coercive civil contempt is limited by the individual defendant's ability to comply. *See Badgley v. Santacroce,* 800 F.2d 33, 36 (2d Cir. 1986).

(b)     **Attorneys' fees as a measure of sanctions under Rule 9011**

In the context of Rule 11, the Fifth Circuit has interpreted the "reasonable fees" language to mean that the fees and expenses reimbursed must "(1) be found to have been caused by a violation of *Rule 11*, and (2) be found to be reasonable." *In re Midwest Props.*, 93 B.R. at 361. This same reasoning applies in analyzing sanctions under 9011. *In re Case*, 937 F.2d 1014.

"Actual expenses and attorney's fees are not necessarily reasonable because the party seeking Rule 11 costs and attorney's fees has a duty to mitigate expenses by correlating his response in hours and funds expended to the merit of the claims." *Childs v. State Farm Mutual Automobile Insurance Co*., 29 F.3d 1018, 1027 (5th Cir. 1994); *cf.*, *In re Weaver*, 307 B.R. 834, 847 (Bankr. S.D. Miss. 2002) (a party seeking Rule 11 costs and attorney's fees has a duty to mitigate those expenses in order for the expenses to be found reasonable).

Courts within the Fifth Circuit have considered four factors in determining what sanction to impose: (1) what conduct is being punished or is sought to be deterred by the sanction; (2) what expenses or costs were caused by the violation of the rule; (3) were the costs or expenses "reasonable," as opposed to self-imposed, mitigatable, or the result of delay in seeking court intervention; and (4) whether the sanction imposed the least severe sanction adequate to achieve the purpose of the rule under which it was imposed. *In re Coastal Land Dev. Corp*., 2009 Bankr. LEXIS 1423, 34-38 (Bankr. S.D. Miss. May 29, 2009). *See e.g., McLaurin v. Werner*, 909 F. Supp. 447, 456 (S.D. Miss. 1995). *See also Topalian v. Ehrman*, 3 F.3d 931, 936-37 (5th Cir.1993); *Bruno v. Star*, 2006 U.S. Dist. LEXIS 68325, 2006 WL 2631861, *5 (E.D. La. 2006) (a party seeking Rule 11 damages must mitigate expenses).

With these standards in mind, the Court should review the record of Payne's limited participation in this case to determine whether the monetary sanctions are both appropriate and

the least severe sanction available to the bankruptcy court under the circumstances of the case. *In re Midwest Props. No. Two v. Big Hill Investment Co., Inc.*, 93 B.R., 357, 361 (N.D. Tex. 1988). Again, Payne filed a single pleading and made a single court appearance prior to appealing this Court's order regarding his authority.

> **5.      The imposition of sanctions under 18 U.S.C. § 1927 would not be appropriate.**

Pursuant to 18 U.S.C. § 1927, "any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." The Fifth Circuit has held that this statute is applicable to bankruptcy courts. See, e.g., *Citizens Bank & Trust Co. v. Case (In re Case)*, 937 F.2d 1014, 1023 (5th Cir. 1991). But the Fifth Circuit also interprets this statute as requiring evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court. *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998). This element is missing from Payne's actions in this matter. Like contempt powers derived elsewhere, the statute and the powers to sanction which this statute accords to a court should be "sparingly applied." *FDIC v. Calhoun*, 34 F.3d 1291, 1297 (5th Cir. 1994) (citing *Browning v. Kramer*, 931 F.2d 340, 345 (5th Cir. 1991)). Federal courts may regulate the behavior of abusive litigants by imposing carefully tailored restrictions on their further filings. Such injunctions are appropriate where a litigant's lengthy and abusive history is set forth. *Alkasabi v. Rampart*, 2011 U.S. Dist. LEXIS 34939, at *11-12, fn. 10, citing *Andrews v. Heaton*, 483 F.3d 1070, 1077 (10th Cir. 2007).

A specific analysis must be undertaken by a Court when addressing an allegedly vexatious litigant. An injunction against future filings may not issue unless: (1) the litigant

receives notice and a chance to be heard before the order is entered; (2) there is an adequate record of the cases or abusive activities undertaken by the litigant; (3) there is a substantive finding that the claims brought were frivolous or were brought with the intent to harass the parties; and (4) the scope of the injunction is narrowly prescribed to fit the abuse that the court seeks to prevent. *In re Kristan*, 395 B.R. 500, 511 (1st Cir. 2008). Before imposing such a measure, a court should examine all relevant circumstances, including "(1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions." *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 190 (5th Cir. 2008), quoting *Martin-Trigona v. Lavien (In re Martin-Trigona)*, 737 F.2d 1254, 1262 (2nd Cir. 1984). Injunctions against future filings by those found to be vexatious litigants must be tailored to protect the legitimate rights of such litigants, while also protecting the courts and innocent parties. *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359-60 (5th Cir. 1986).

Payne did not make frivolous claims, there is no evidence that he had an intent to harass the parties. He has not filed vexatious, harassing or duplicative lawsuits, and he did have a good faith basis to believe what he filed was proper. Therefore, the imposition of sanctions on Payne under 18 U.S.C. § 1927 would not be appropriate.

**B.     This Court cannot hold Payne in contempt for violating the order of another Court, or filing a notice of appeal of the very order under which contempt is sought to be imposed.**

The elements of civil contempt are: "(1) that a court order was in effect, and (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order." *In re Bradley*, 588 F.3d at 264, citing *FDIC v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995). Each element must be shown by clear and convincing evidence, which is

"that weight of proof which 'produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitance of the truth of the precise facts' of the case." *Travelhost, Inc. v. Bladford*, 68 F.3d 958, 961 (5th Cir. 1995). Where failure to comply with a court order is established, the respondent then bears the burden of showing mitigating circumstances, or that the respondent substantially complied with the court's order <u>or made every reasonable effort to comply</u>, such that the court might withhold exercising its contempt power. *Faulkner v. Kornman (In re The Heritage Organization, LLC)*, Bankruptcy No. 04-35574-BJH-11, 2010 Bankr. LEXIS 3129, citing *FDIC v. Le Grand*, 43 F.3d at 170 (5th Cir. 1995) [emphasis added].

This Court cannot hold Payne in contempt for violating the order of another court. See, e.g., *Citizens Bank & Trust Co. v. Case (In re Case)*, 937 F.2d 1014, 1023 (5th Cir. 1991) (28 U.S.C. § 1927 limits a court's power to sanction to that conduct which is part of the proceedings before the court issuing the sanctions). The inherent power of the court to sanction attorneys before it "must arise from the litigation before [the sanctioning] court." *Id.* at 1024, cited by *Plaintiff's Liaison Counsel v. Defendant's Liaison Counsel (In re FEMA Trailer)*, 401 Fed. Appx. 877, 882-83 (5th Cir. 2010); see also *FDIC v. MAXXAM, Inc.*, 523 F.3d 566, 593 (5th Cir. 2008) (stating that *Chambers* upheld a court's inherent power to police *itself*). Therefore, Payne cannot be sanctioned for appearing as counsel for Novo Point, on the basis of any order entered in the District Court Case. No order of this Court forbade the appearance by Payne on July 22, 2011, or at the hearing on July 26, 2011. The scope of the Court's inquiry then is limited to Payne's filing a Notice of Appeal of the Order to Show Authority, as Payne did not intentionally or willfully file the documents that were electronically filed by Schepp.

The Order to Show Authority ordered Payne not to appear or file anything without showing authority and putting on evidence of the same. But an appeal of that very same order cannot, in itself, constitute contempt. *Webster*, 846 F.2d at 1035 (holding that a judge cannot sanction a party or a lawyer for taking an appeal). To sanction the filing of an appeal, on the grounds that doing so violates the very order made the subject of the appeal would have an improper chilling effect on other litigants. Moreover, the filing of the appeal removed to the appellate court (in this case the District Court) the jurisdiction over matters having to do with the appeal and the order made the subject of the appeal. See, e.g., *Venen v. Sweet*, 758 F.2d 117, 120 (3rd Cir. 1985) ("As a general rule, the timely filing of a notice of appeal is an event of jurisdictional significance, immediately conferring jurisdiction on [an appellate court] and divesting a [trial] court of its control over those aspects of the case involved in the appeal"). *Hogg v. United States*, 411 F.2d 578 (holding the district court had no power to strike a notice of appeal to the 6th Circuit, as jurisdiction transferred on filing of the notice of appeal, and district court had no more power to act except in aid of the appeal).

## IV.

## <u>CONCLUSION</u>

WHEREFORE, having show this Court the good faith inquiry which was made by Payne in connection with his appearances and the signing of pleadings in this Court, Payne moves this Court to refrain from imposing sanctions upon him. Payne moves for such other and further relief to which he may be entitled, at law or in equity.

Dated: October 21, 2011.

Respectfully Submitted,


      /s/ *Frances A. Smith*
Frances A. Smith
Texas State Bar No. 24033084
Nicole T. LeBoeuf
Texas State Bar No. 00791091
SHACKELFORD MELTON & MCKINLEY, LLP
3333 Lee Parkway, Tenth Floor
Dallas, Texas 75219
Telephone: 214.780.1400
Facsimile: 214.780.1401

**COUNSEL FOR CHRISTOPHER A. PAYNE**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Response was served upon the following by first-class United States mail and email (where indicated) and by the Court's ECF noticing system upon those parties who have requested and agreed to electronic notification on October 21, 2011.

　　　　　　　　　　　　　　　　　　　　　　　/s/ Frances A. Smith
　　　　　　　　　　　　　　　　　　　　　　Frances A. Smith

**Debtor:**
Ondova Limited Company
P.O. Box 111501
Carrollton, Texas  75006

**Chapter 11 Trustee:**
Daniel J. Sherman
509 N. Montclair
Dallas, Texas  75208
Email: corky@syllp.com
Email: djsherman@syllp.com

**Counsel for Chapter 11 Trustee:**
Lee Jacob Pannier
Raymond J. Urbanik
MUNSCH, HARDT, KOPF & HARR, P.C.
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas  75201
Email: lpannier@munsch.com
Email: rurbanik@munsch.com

Jay Ong
MUNSCH, HARDT, KOPF & HARR, P.C.
401 Congress Avenue, Suite 3050
Austin, Texas  78701
Email: jong@munsch.com

Daniel J. Sherman
SHERMAN & YAQUINTO
509 N. Montclair  Avenue
Dallas, Texas  75208-5498
Email: corky@syllp.com
Email: djsherman@syllp.com

**U.S. Trustee:**
UST U.S. Trustee
1100 Commerce Street, Room 976
Dallas, Texas  75242-1496

**Noticed Parties:**
John MacPete
LOCKE LORD BISSELL & LIDDELL LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas  75201
Email: JMacPete@lockelord.com

Melissa S. Hayward
Doug Skierski
10501 N. Central Expy., Ste. 106
Dallas, Texas  75231
Email: MHayward@FSLHlaw.com
Email: DSkierski@FSLHlaw.com

Laurence J. Friedman
Ryan K. Lurich
FRIEDMAN & FEIGER, L.L.P.
5301 Spring Valley Road, Suite 200
Dallas, Texas  75254
Email: lfriedman@fflawoffice.com
Email: rlurich@fflawoffice.com

Dana M. Campbell
William L. Foreman
OWENS, CLARY & AIKEN, L.L.P.
700 North Pearl, Suite 1600
Dallas, Texas  75201
Email: dcampbell@oca-law.com
Email: wforeman@oca-law.com

Craig A. Capua
WEST & ASSOCIATES, L.L.P.
P.O. Box 3960
Dallas, Texas 75208-1260

Gerrit M. Pronske
Rakhee V. Patel
Christina W. Stephenson
PRONSKE & PATEL, P.C.
2200 Ross Avenue, Suite 5350
Dallas, Texas 75201
Email: gpronske@pronskepatel.com
Email: rpatel@pronskepatel.com
Email: cstephenson@pronskepatel.com

Raymond J. Urbanik
Lynn Chuang Kramer
MUNSCH HARDT KOPF & HARR, P.C.
3800 Lincoln Plaza
500 North Akard Street
Dallas, Texas 75201
Email: rurbanik@munsch.com
Email: lkramer@munsch.com

Eric Lopez Schnabel
Robert W. Mallard
DORSEY & WHITNEY (DELAWARE) LLP
300 Delaware Avenue, Suite 1010
Wilmington, Delaware 19801
Email: schnabel.eric@dorsey.com
Email: mallard.robert@dorsey.com

Josiah M. Daniel, III
Angela Degeyter
VINSON & ELKINS, LLP
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Email: jdaniel@velaw.com
Email: adegeyter@velaw.com

Mark E. Andrews
Everett New
COX SMITH MATTHEWS INCORPORATED
1201 Elm Street, Suite 3300
Dallas, Texas 75270
Email: mandrews@coxsmith.com
Email: enew@coxsmith.com

Jeffrey Baron
Post Office Box 111501
Carrollton, Texas 75011

Gary G. Lyon
Attorney at Law
Post Office Box 1227
Anna, Texas 75409
Email: glyon.attorney@gmail.com

Martin Thomas
P.O. Box 36528
Dallas, Texas 75235

Stanley D. Broome
BROOME LAW FIRM, PLLC
105 Decker Court, Suite 850
Irving, Texas 75062
Email: SBroome@Broomelegal.com

James M. Eckels
7505 John Carpenter Freeway
Dallas, Texas 75247
Email: jamesmeckels@gmail.com